UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELLS FARGO AND CO., | No. C 12-03856 PJH (DMR) |
| Plaintiff, | **AMENDED ORDER RE NOVEMBER 2, 2012 JOINT DISCOVERY LETTER** |
| v. | |
| ABD INS., *et al.*, | |
| Defendants. | |
| _____/ | |

Before the court is the parties' joint letter addressing a discovery dispute regarding 142 third party subpoenas issued by Plaintiffs. [Docket No. 53 ("Joint Letter").] The court conducted a hearing on November 29, 2012, during which the parties were given an opportunity to present oral argument. For the reasons below, Defendants' request for an order limiting discovery pursuant to Federal Rule of Civil Procedure 26 is granted in part and denied in part.

**I. Background**

In 2007, Plaintiffs Wells Fargo & Company and Wells Fargo Insurance Services, USA, Inc. (collectively, "Plaintiffs" or "Wells Fargo") purchased the assets of ABD Insurance and Financial, Inc., an insurance brokerage, including "the trademark ABD and all goodwill in the ABD mark." (Compl. ¶ 10.) The ABD brand had been continuously used for more than 18 years in the insurance and financial services brokerage marketplace, and was a top-ranked insurance brokerage in the Bay

Area and in the US. (Compl. ¶¶ 12, 13.) Although Wells Fargo later formally changed the name of ABD to Wells Fargo Insurance Services, Wells Fargo alleges that it continued to actively use the ABD name and trademark "because of the substantial goodwill established in the ABD name." (Compl. ¶ 15.)

According to Plaintiffs, in 2011 Defendants ABD Insurance & Financial Services, Inc., Kurt de Grosz and Brian Hetherington (collectively, "Defendants") began a "systematic campaign to 're-launch' their insurance brokerage as the 'new' ABD," seeking to "appropriate for their own benefit the goodwill associated with the ABD name." (Joint Letter 6.) Plaintiffs allege that Defendants' "campaign" began in October 2011, when Insurance Leadership Network, Inc. ("ILN"), a competing insurance and financial services company, filed an application with the U.S. Patent and Trademark Office for the ABD mark, thus "laying the groundwork to start operating its business as if it were ABD, the company founded years ago by the same individuals who sold it" to Wells Fargo.[1] (Compl. ¶ 23.) In July 2012, ILN changed its name to ABD Insurance and Financial Services, Inc., and Plaintiffs allege that Defendants began making false and misleading representations that the new ABD was a "reintroduc[tion]" and a "re-launch" of the business Wells Fargo acquired in 2007. (Compl. ¶ 44.) In addition, Defendants also allegedly recruited over 50 of Plaintiffs' employees to leave Wells Fargo and to join the "new" ABD.[2] (Compl. ¶ 18.)

On July 24, 2012, Wells Fargo filed suit against Defendants alleging, *inter alia*, claims for trademark infringement and false advertising. (*See generally* Compl.) Defendants contend that Wells Fargo stopped using the ABD name after its acquisition and cancelled the federal registration for the ABD brand effective in 2010, effectively abandoning the trademark. (Joint Letter 2.)

On August 7, 2012, Plaintiffs filed a motion for leave to conduct expedited discovery, asserting that early discovery was necessary in order to accelerate resolution of their forthcoming

---

[1] ILN's president, Defendant de Grosz, is the son of one of the original founders of ABD Insurance and Financial, Inc. (Compl. ¶ 16.)

[2] Wells Fargo filed another action in Santa Clara County Superior Court against six of its former employees who joined the new ABD, alleging breach of the duty of loyalty and misuse of confidential information. (Joint Letter 2.)

motion for a preliminary injunction.[3]  [Docket No. 19.]  On September 14, 2012, the Honorable Phyllis J. Hamilton, presiding, granted both parties leave to conduct certain limited discovery. [Docket No. 39.]  Between October 5 and 10, 2012, Plaintiffs served 142 third party subpoenas for documents on current and former Wells Fargo clients, some of whom have moved their insurance business from Wells Fargo to the new ABD.  Defendants now ask the court to enter an order pursuant to Federal Rules of Civil Procedure 26 and 45, requiring Wells Fargo to withdraw the 142 subpoenas served on the third parties.  (Joint Letter 5.)

## II.  Legal Standards

Federal Rule of Civil Procedure 45 governs motions to quash or modify a subpoena, and provides that a court must modify or quash a subpoena that, *inter alia*, "fails to allow a reasonable time to comply," "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(i), (iii), (iv).  In general, a party has no standing to quash a subpoena served upon a third party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena. *Coulter v. Murrel*, No. 10-102 IEG (NLS), 2011 WL 666894, at *2 (S.D. Cal. Feb. 14, 2011) (not reported in F. Supp. 2d); *see also In re Ashworth, Inc. Securities Litig.*, No. 99-CV-121, 2002 WL 33009225, at *2 (S.D. Cal. May 10, 2002) (not reported in F. Supp. 2d) (holding party has standing to quash third party subpoenas based on party's "proprietary interest" in commercial information sought).  A party's objection that a subpoena to a non-party seeks irrelevant information or would impose an undue burden are not grounds on which a party has standing to move to quash a subpoena when the non-party has not objected.  *Finley v. Pulcrano*, No. C 08-0248 PVT, 2008 WL 4500862, at *1 (N.D. Cal. Oct. 6, 2008) (not reported in F. Supp. 2d); *G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, at *3 (D. Nev. Jan. 9, 2007) (not reported in F. Supp. 2d).  However, a party may seek a protective order pursuant to Rule 26(c) regarding a subpoena issued to a non-party if it believes its own interest is jeopardized by the discovery sought from the non-party.  *See Auto-Owners Ins. Co. v. Southeast Floating Docks,*

---

[3] Plaintiffs filed a motion for a preliminary injunction on November 30, 2012.  A hearing on the motion is set for January 16, 2013 before Judge Hamilton.  [Docket No. 55.]

3

*Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE CIVIL 2D § 2035).

Rule 26(c) grants courts broad authority to issue protective orders regarding discovery, *see Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990), and, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). The court may also limit proposed discovery on a motion or on its own pursuant to Rule 26(b) if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, or that the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

### III. Discussion

Plaintiffs' subpoenas requested "[a]ll documents and things received from" and "provided to" "any of the following entities or individuals from January 1, 2011 to the present date, including, but not limited to, any email communications, correspondence, proposals, presentations, checks, electronic documents, and CDs," listing 80 different individuals and entities, most of whom are former Wells Fargo employees who joined Defendants' "new" ABD. (Joint Letter, Ex. 1.) Plaintiffs argue that they seek to discover evidence that "Defendants disseminated false, misleading, and otherwise improper statements to dozens of Wells Fargo's clients, customers, and prospects." (Joint Letter 6.) Defendants ask the court to enter a protective order pursuant to Rules 26(b) and (c) and Rule 45(c), requiring Wells Fargo to withdraw the 142 subpoenas served on the third parties. (Joint Letter 5.) Defendants seek such an order on the grounds that the subpoenas are overbroad, unduly burdensome and seek information that is not relevant to trademark issues. Defendants also argue that the subpoenas are an attempt by Plaintiffs to harass the Defendants' business and its clients. (Joint Letter 2, 4-5.)

As a preliminary matter, the court finds that Defendants lack standing under Rule 45(c) to quash the subpoenas served on the third parties, as Defendants have made no showing that their confidential proprietary commercial information is at risk. *See Ashworth*, 2002 WL 33009225, at

4

*2. Further, there is already a stipulated protective order in this case that will adequately protect the parties' interests in confidentiality. [*See* Docket No. 44.] Accordingly, the court will analyze Defendants' request for an order directing Plaintiffs to withdraw the 142 subpoenas under Rule 26(b), which authorizes a court to limit the scope of discovery.

      In the joint letter, and during oral argument, Defendants stated that the service of the subpoenas has had both direct and indirect negative effects on the new ABD's relationship with its clients, some of whom have indicated their displeasure with being made a part of this litigation. At least one recipient suggested that it might terminate its business relationship with Defendants as a result of the subpoena. At the hearing, the court expressed its concerns regarding the large number of subpoenas served on Defendants' clients. However, Plaintiffs' counsel represented to the court that the group of 142 third parties is actually a subset of a larger group of approximately 800 entities who either are Defendants' clients, or who Defendants solicited for business. Plaintiffs allege that Defendants lured clients away from Wells Fargo through use of false information and infringing use of the ABD mark. Plaintiffs selected the 142 subpoena recipients with the goal of providing a representative sample of the larger group of 800, seeking a representation of various types of insurance accounts (such as employee benefits, property & casualty, and retirement insurance), as well as a sample of clients who took their entire insurance business from Wells Fargo to the new ABD, clients who took only part of their business from Wells Fargo to the new ABD, and those clients whom the new ABD solicited but maintained their business with Wells Fargo. She also chose some third parties based on evidence in Plaintiffs' possession about Defendants' representations to those entities. According to Plaintiffs' counsel, only three or four subpoena recipients served formal written objections, which Plaintiffs characterized as boilerplate objections provided by Defendants for the third parties' use. To date, approximately 19 third parties have already provided Wells Fargo with documents responsive to the subpoenas, and counsel for Plaintiffs represented that the responses have included probative information. Plaintiffs' counsel provided several examples of the probative information, such as emails that lend support to Plaintiffs' false advertising and trademark claims.

1  //
2  //
3  //
4        Although the court does not find that Plaintiffs intended to oppress Defendants by serving
5  such a large number of subpoenas on Defendants' clients, the court finds that the subpoenas may in
6  fact have that effect.  Plaintiffs do not need 142 subpoenas, in addition to discovery they have
7  obtained directly from Defendants, in order to support their motion for preliminary injunction.
8  Accordingly, the court finds it appropriate to limit the number of subpoenas that may proceed at this
9  time.  Given Plaintiffs' representations that the group of 142 was narrowed from a much larger
10 group, and that Plaintiffs have received relevant, probative information in response to the subpoenas
11 and very few objections, the court will allow Plaintiffs to select 50 third parties for whom the
12 subpoenas may proceed, in addition to the approximately 19 third parties who have already
13 responded.  This order is without prejudice to Plaintiffs requesting leave to proceed with the
14 remaining subpoenas in the future upon a showing of good cause.
15       While Plaintiffs may proceed with 50 additional subpoenas on third parties, the court finds
16 that the scope of the request for documents ("all documents and things" received from and provided
17 to 80 entities and individuals from January 1, 2011 to the present) is overbroad.  Accordingly, the
18 scope of the documents requested in the subpoenas shall be narrowed according to the compromise
19 proposed by Wells Fargo in the joint letter, as follows: documents which referred to "ABD" from
20 July 2011 to the present; pitch and similar materials addressing "ABD" from July 2012 to the
21 present; documents making representations regarding Defendants' departure from Wells Fargo from
22 July 2012 to the present; and documents expressing confusion or uncertainty regarding the ABD
23 name or the connection between the new ABD and the original ABD Insurance and Financial, Inc.
24 In addition, Wells Fargo may request CDs burned and sent to third parties to the extent that it limits
25 its request to those CDs containing Wells Fargo customer information that were burned on a certain
26 date.  The parties shall meet and confer to determine the precise language of the document requests
27 that will accompany the 50 subpoenas.  In addition, Plaintiffs shall allow each third party at least 20
28

days to respond to the subpoenas. Plaintiffs need not formally re-serve the subpoenas that will go forward at this time.

IT IS SO ORDERED.

Dated: December 10, 2012



DONNA M. RYU
United States Magistrate Judge